UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANE BROZYNA and ZYGMONT BROZYNA,

                                    Plaintiffs,

                 -vs-                                              10-CV-602-JTC

NIAGARA GORGE JETBOATING, LTD.,

                                    Defendant.

_____

By order entered September 13, 2011 (Item 39), this matter was reassigned to the undersigned for all further proceedings.

This action was commenced on July 9, 2010, by the filing of a summons and complaint in New York State Supreme Court, Erie County, seeking money damages to compensate for personal injuries allegedly sustained by plaintiff Diane Brozyna on August 5, 2009, while riding as a passenger in a whitewater excursion jet boat owned and operated by defendant Niagara Gorge Jetboating, Ltd.  The case was subsequently removed to this court pursuant to 28 U.S.C. § 1441, based upon the jurisdiction conferred by 28 U.S.C. §§ 1332 (diversity of citizenship of the parties) and 1333 (admiralty or maritime jurisdiction).  *See* Item 1-2.

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety on the ground that, as a condition to their participation in the jet boat excursion, each of the plaintiffs signed a valid release and waiver of all claims against defendant.  Item 18.  For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Defendant owns and operates a commercial jet boat excursion business on the Niagara River under the d/b/a "Whirlpool Jet."  The tours depart daily from May through October from locations in Niagara Falls and Niagara-on-the-Lake, Ontario, and Lewiston, New York, with each tour returning to the location from which it departed.  Whirlpool Jet operates a fleet of eight diesel driven jet boats specifically designed and built to carry passengers on whitewater excursions through the "Class-5" rapids of the lower Niagara River, including the areas known as "The Whirlpool" and "Devil's Hole."  Item 22 (Kinney Decl.), at ¶¶ 2-3.

As a condition to participating in the Whirlpool Jet excursion, each customer is required to sign and initial a "Participation Agreement," containing the following provisions:

> **YOUR SIGNATURE ON THIS FORM INDICATES YOU ACCEPT THE CONDITIONS OUTLINED BELOW AND UNDERSTAND THE RISK INHERENT IN THIS ACTIVITY.  You also acknowledge that you have read this document at your leisure and have had adequate time to decide whether to participate in this activity.  THIS ACTIVITY IS NOT RECOMMENDED FOR PEOPLE SUFFERING FROM MEDICAL CONDITIONS INVOLVING THE NECK, BACK OR HEART.**
>
> . . . .
>
> I, the Undersigned, on behalf of myself, my heirs, executors, administrators and assigns, in consideration of **NIAGARA GORGE JET BOATING Ltd.,** carrying on business as **WHIRLPOOL JET** (the "Company"), permitting me to participate in its activity, do hereby RELEASE and forever DISCHARGE the Company, its agents, servants and employees, successors and assigns, from all manner of actions, causes of action, suits, debts, contracts, claims and demands whatsoever, which I now have, shall or may have for or by reason of any cause, matter or thing, including negligence on the part of the Company, its agents, servants and employees. I agree not to make any claim against any person or corporation who might claim contribution or indemnity against the Company, its agents or employees.

. . . .

**I AM AWARE** that there are risks, hazards and dangers inherent in jet boating (the "Company's Activity") including bumping and jolting of the boat. Notwithstanding such risks, hazards and dangers, I request the Company to allow me to participate in its Activity, and I hereby agree to assume all risks involved in engaging in the above Activity.

**I AGREE,** and am aware, that as a condition of being allowed to participate in the Company's Activity, I do warrant that I am comfortable in and around the water while wearing a life jacket and that I am in good physical health. In particular, I warrant that I have no medical condition involving my neck, back or heart.  I also warrant that I am NOT pregnant.

**I HEARBY** [sic] **ACKNOWLEGE** [sic] **THAT I HAVE READ THIS AGREEMENT** at my leisure and understand that it is a **FULL AND FINAL RELEASE** and waiver of all my claims for damages or injuries sustained as a result of my participation in the Company's Activity, and that I am signing this Agreement voluntarily, knowing full well that I am releasing and forever discharging the Company and its agents, servants and employees of all liability for any losses and damages which I may sustain.

Item 22-3, at 2.

In addition, as a matter of company policy, all Whirlpool Jet customers are required to attend a safety briefing prior to boarding.  The briefing is conducted by Niagara Gorge employees, and is intended to provide a detailed description of the excursion as well as an express warning of the risks associated with a jet boat ride in Class 5 whitewater rapids. Specifically, customers are cautioned about participating in the excursion if they have any health concerns regarding their neck, back, or heart.  They are also instructed how to best position themselves during the course of the excursion, and are warned that they could experience rougher conditions if they elect to sit in the first three rows of the boat.  Item 22, ¶ 4.

On August 5, 2009, plaintiffs Diane and Zygmont Brozyna, along with other family members, participated in a Whirlpool Jet excursion which embarked from the Lewiston dock.  Prior to the boarding the jet boat, each plaintiff signed the Participation Agreement and attended the safety briefing.  Upon boarding, the Brozynas sat in the first row of the boat.  During the excursion, Ms. Brozyna felt "discomfort" when the boat "came down hard" in the rapids at Devil's Hole.  Item 32-4, at 2.  The excursion leader, Erin Anderson, noticed that Ms. Brozyna was in distress, and directed the captain to return the boat to the Lewiston dock.  Ms. Brozyna was then taken by ambulance to the emergency room at Mount St. Mary's Hospital in Lewiston.  X-rays, CT scan and MRI of the lumbosacral spine confirmed "[a]cute compression fracture of superior endplate" of the L-1 vertebrae, with "multiple level degenerative lumbar disc disease."  Item 32-5, at 2.  She was offered surgical and non-surgical treatment options, choosing kyphoplasty[1] which was performed by Young J. Yu on August 7, 2009.  *Id.* at 2-3.

In the complaint, plaintiffs allege that the injury to Ms. Brozyna's spine occurred as the result of defendant's negligence in the operation of the jet boat excursion, including inadequate warnings about dangerous conditions and inadequate training of the operator. *See* Item 1-2, ¶ 6.  Plaintiffs also assert a claim for damages based on Mr. Brozyna's alleged loss of his wife's "services, society, comfort and companionship . . . ." *Id.* at 11.

Defendant moves for summary judgment dismissing these claims on the ground that, as a matter of well-established admiralty law, recovery in this case is precluded by

---

[1]Kyphoplasty is a relatively recent procedure to treat spinal compression fractures, whereby "a surgical instrument is introduced into the spine with a balloon that is inflated to expand the bone.  Once this instrument is withdrawn, the space created is then filled with the bone cement mixture." MedicineNet.com MedTerms Dictionary.

plaintiffs' execution of valid and enforceable waivers and releases of claims against defendant as a condition of their participation in the whitewater excursion.   For the following reasons, the court finds that the waiver of liability signed by each plaintiff is indeed valid and enforceable, and that defendant is entitled to summary judgment dismissing the complaint.

## DISCUSSION

### I.    Summary Judgment

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged.  *See, e.g., Faulkner v. Arista Records LLC*, ___F. Supp. 2d___, ___, 2011 WL 2135082, at *8 n. 7 (S.D.N.Y. May 26, 2011); Fed. R. Civ. P. 56, Committee's notes to 2010 amendments.  Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ."  *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed . . . ." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v. Anderson*, ___F. Supp. 2d___, ___, 2011 WL 2117564, at *4 (W.D.N.Y. May 27, 2011). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

## II.    Admiralty Jurisdiction

Federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."  28 U.S.C. § 1333(1).  Under Supreme Court precedent, a tort claim will fall within federal admiralty jurisdiction of the federal courts when two conditions are met.  First, the alleged tort must have occurred on "navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).  Second, the activity giving rise to the incident must have had a "'substantial relationship to traditional maritime activity . . .,'" such that the incident had "'a potentially disruptive influence on maritime commerce . . . .'" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 365-66 (1990)); *see also Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009).

Both of these conditions are met in this case.  First, this court has long held that the entire Niagara River, including the lower portion of the river where the incident at issue occurred, is navigable as a matter of law.  *Sawczyk v. U. S. Coast Guard*, 499 F. Supp. 1034, 1039-40 (W.D.N.Y. 1980).  Second, the courts have routinely found that the operation of recreational boats on navigable waters bears a significant relationship to traditional maritime activity.  *See, e.g., Grubart*, 513 U.S. at 539-40 ("Navigation of boats in navigable waters clearly falls within the substantial relationship …."); *Charnis v. Watersport Pro, LLC*, 2009 WL 2581699, at *2 (D.Nev. May 1, 2009) ("[T]he operation of recreational boats … bears a significant relationship to traditional maritime activity.").

"With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986); *see also Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084, 1087 (2d Cir. 1993).  In fact, even if a case is removed to federal court based on diversity, federal maritime law must be applied if admiralty jurisdiction exists.  *See Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 311 (S.D.N.Y. 2004) ("It is well settled that if a complaint in a tort action invoking diversity jurisdiction pleads a claim within the admiralty jurisdiction of the federal courts, the district court will apply the general maritime law.").

## III.    Enforceability of Liability Waivers Under Admiralty Law

There is a substantial body of general maritime law dealing with the enforceability of the type of liability waiver executed by plaintiffs in this case.  Indeed, the clear majority of federal cases to consider the issue holds that operators of inherently risky marine recreational activities may contract to disclaim liability for their own negligence.  *See, e.g.,*

*Charnis*, 2009 WL 2581699, at \*4-5 (wakeboarding excursion); *Olivelli v. Sappo Corp., Inc.*, 225 F. Supp. 2d 109, 118-20 (D.P.R. 2002) (scuba diving excursion); *Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc.*, 1999 WL 33232277, at \*3 (S.D.Fla. 1999) (scuba diving); *Waggoner v. Nags Head Water Sports, Inc.*, 141 F.3d 1162, \*5-6 (4th Cir.1998) (jet skiing). From these cases emerges the discernible standard that a pre-accident waiver will absolve an owner or operator of liability for recreational accidents taking place on navigable waters where the exculpatory clause "(1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is not an adhesion contract." *Charnis*, 2009 WL 2581699, at \*5; *see also Olivelli*, 225 F. Supp. 2d at 116; *Murley ex rel. Estate of Murley v. Deep Explorers, Inc.*, 281 F. Supp. 2d 580, 589-90 (E.D.N.Y. 2003).

Plaintiffs do not forcefully dispute that they each willfully executed the Participation Agreement,[2] nor do they challenge the clarity of the waiver and release language. Indeed, as noted by the court in *Olivelli*, "it would be difficult to imagine language more clearly drafted so as to put a person on notice of its legal significance and effect." 225 F. Supp. 2d at 118. The agreement provides plainly worded notice of the "risks, hazards and dangers inherent in jet boating . . . including bumping and jolting of the boat;" that the excursion "is not recommended for people suffering from medical conditions involving the neck, back or heart;" and that in consideration of permission to participate in the excursion, the person signing the agreement released the company from liability for all claims for

---

[2]Ms. Brozyna testified at her deposition that she did not read the Participation Agreement before she signed it. Item 27, at 7. However, it is a well settled principle of contract law that "parties are 'conclusively' bound by the contracts they sign whether or not the party has read the contract as long as there is no fraud, duress or some other wrongful act of the other party." *Tuskey v. Volt Information Sciences, Inc.*, 2001 WL 873204, at \*3 (S.D.N.Y. Aug. 3, 2001) (citing cases).

injuries that might occur "by reason of any cause, matter or thing, including negligence on the part of the Company, its agents, servants and employees." Item 22-3, at 2.

However, plaintiffs contend that the waiver of liability is void as a matter of public policy under New York General Obligations Law § 5–326, which provides:

> Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.

N.Y. Gen. Oblig. Law § 5-326. In this regard, even where (as here) substantive admiralty law controls the rights and liabilities of the parties, state law may nonetheless apply to the extent that it "would not disturb the uniformity of maritime law." *Kossick v. United Fruit Co.*, 365 U.S. 731, 738 (1961). "Accordingly, state law applies where no applicable admiralty rule exists, where local and state interests predominate and where the uniformity principle is not crucial. . . . State law also applies where it supplements, but does not contradict, an admiralty rule that does not constitute a pervasive system." *Stanley v. Bertram-Trojan, Inc.*, 868 F. Supp. 541, 543 (S.D.N.Y. 1994) (citing Schoenbaum, ADMIRALTY AND MARITIME LAW 143-44, 145 (2d ed. 1994)).

As evidenced by the holdings in the cases cited above, there is a clearly stated rule in maritime jurisprudence in favor of allowing parties to enter into enforceable agreements to allocate the risks inherent in marine recreational activities. In the absence of any showing by plaintiffs that the interests expressed in General Obligations Law § 5-326

should be found to predominate over the long-recognized national interest in the development of a uniform body of maritime law, *see, e.g., Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 402 (1970) (federal admiralty law should be a system of law coextensive with, and operating uniformly in, the whole country); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir. 1990) ("[I]ndeed, the reason for the conferral of federal admiralty jurisdiction was to protect the maritime industry through the development of a uniform body of admiralty law."), the court finds no reason to disturb the commonplace practice of requiring participants in such activities to sign pre-accident waivers of liability for damages arising out of the operator's negligence.  As aptly summarized by the California Court of Appeal in *National and Intern. Broth. of Street Racers, Inc. v. Superior Court*:

> In cases arising from hazardous recreational pursuits, to permit released claims to be brought to trial defeats the purpose for which releases are requested and given, regardless of which party ultimately wins the verdict.  Defense costs are devastating.  Unless courts are willing to dismiss such actions without trial, many popular and lawful recreational activities are destined for extinction.

264 Cal. Rptr. 44, 46-47 (Cal. Ct. App. 1989).

Finally, there is no indication that the Participation Agreement could be considered to be a contract of adhesion, *i.e.*, a "take it or leave it proposition with no opportunity for negotiation."  *Tokio Marine v. Macready*, ___F. Supp. 2d___, ___, 2011 WL 1326488, at *6 n. 6 (E.D.N.Y. Mar. 31, 2011).  The excursion "is a strictly voluntary recreational pursuit, and does not constitute the rendition of essential services such as medical care or public transportation, where the courts would be more likely to find that a contract of adhesion exists."  *Olivelli*, 225 F. Supp. 2d at 119.  Plaintiffs at all times had the option to decline to

-10-

participate in the excursion, and signed the waiver agreement after receiving notice of the

hazardous nature of Class 5 whitewater jetboating and, specifically, the risk of aggravating

any preexisting neck, back, or heart problems.

For these reasons, the court finds that the waiver and release of liability contained

in the Whirlpool Jet Participation Agreement signed by plaintiffs is enforceable as a matter

of well recognized admiralty law.  Accordingly, no genuine issue of material fact exists for

a jury to determine with respect to plaintiffs' claims arising out of their participation in the

whitewater jetboat excursion on August 5, 2009, and defendant is entitled to summary

judgment dismissing the complaint.

## **CONCLUSION**

Based on the foregoing, defendant's motion for summary judgment (Item 18) is

granted, and the complaint is dismissed in its entirety.  The Clerk of the Court is directed

to enter judgment in favor of defendant.  The parties shall bear their own costs.

So ordered.

_____/s/ John T. Curtin_____

JOHN T. CURTIN
United States District Judge

Dated:  Sepember   28    , 2011
p:\opinions\10-602.sep192011